24-1034 (L)
*Horn v. Adger*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of June, two thousand twenty-five.

Present:    DEBRA ANN LIVINGSTON,
                    *Chief Judge*,
                RAYMOND J. LOHIER, JR.,
                EUNICE C. LEE,
                    *Circuit Judges.*

_____

VERNON HORN, MARQUIS JACKSON,

            *Plaintiffs-Appellees*,

        v.                                                            24-1034 (L)
                                                                      24-1038 (Con)

PETISIA ADGER, LEE DEASE, Executor of the Estate of Leroy Dease, DARYLE BRELAND,

            *Defendants-Appellants*,[*]

CITY OF NEW HAVEN, LEROY DEASE, JAMES STEPHENSON,

            *Defendants.*

_____

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

1

FOR PLAINTIFFS-APPELLEES: ILANN M. MAAZEL (Nicholas Bourland, Hannah Brudney, *on the brief*), Emery Celli Brinckerhoff Abady Ward & Maazel LLP, New York, NY, *for* Vernon Horn.

KENNETH ROSENTHAL, Law Office of Kenneth Rosenthal, New Haven, CT, *for* Marquis Jackson.

FOR DEFENDANTS-APPELLANTS: BRADFORD S. KRAUSE (Thomas E. Katon, *on the brief*), Susman, Duffy & Segaloff, P.C., New Haven, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Chatigny, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeal is **DISMISSED**.

Three former detectives with the City of New Haven Police Department[1] (the "Detectives") challenge the district court's determination that they are not entitled to qualified immunity at the summary judgment stage on claims brought by Plaintiffs Vernon Horn and Marquis Jackson under 42 U.S.C. § 1983. Specifically, the Detectives appeal the district court's denial of qualified immunity on Plaintiffs' claims for (1) *Brady* violations; (2) fabrication of evidence; and (3) failure to intervene. Plaintiffs have filed motions to dismiss this appeal for lack of appellate jurisdiction. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Horn and Jackson were convicted of a 1999 murder in connection with the robbery of a deli in New Haven. Almost 20 years later, in 2018, the State of Connecticut agreed to vacate these convictions based on newly discovered information. Plaintiffs thereafter commenced the

---

[1] In light of Leroy Dease's death, Lee Dease, as the executor of his estate, is included as a Defendant below and an Appellant here.

2

present actions against the City of New Haven; former forensic firearms examiner James Stephenson; and the three Detectives, Petisia Adger, Leroy Dease, and Daryle Breland.

Plaintiffs' convictions were based in part on the testimony of three witnesses. First, Kendall Thompson, a deli customer present during the crime, testified that he had identified Horn and Jackson as the perpetrators of the robbery after he was shown their photos at the police station. Plaintiffs claim that Detectives Dease and Breland suppressed: (1) Thompson's statements denying "about 18 times" that he could identify the masked perpetrators, App'x 220, and (2) the Detectives' threats to have Thompson violated on his probation unless he made the identifications. Next, Marcus Pearson testified that Horn lent him a cell phone that was stolen from a deli employee during the robbery, linking Horn to the crime. Plaintiffs argue that Detectives Dease and Breland fabricated this statement, suppressed Pearson's repeated denials that Horn lent him a cell phone, and suppressed their threats to, *inter alia*, arrest Pearson for the murder, have him violated on his probation, and place Pearson's children in the custody of the Connecticut Department of Children and Families, if he did not admit to the Detectives' version of events. And finally, Steven Brown, an admitted perpetrator of the robbery, testified that he borrowed the stolen phone from Horn after the incident and later returned it to Horn after making a few calls. Plaintiffs assert that Detectives Dease and Adger fabricated Brown's statements to fit with their preexisting narrative of the events following the murder.

## I. Appellate Jurisdiction

In general, "we lack jurisdiction to review the denial of a motion for summary judgment." *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016). But the collateral order doctrine provides an exception to this general rule "when the denied motion was based on a claim of immunity, at least to the extent the immunity claim presents a 'purely legal question.'" *Walczyk v. Rio*, 496

3

F.3d 139, 153 (2d Cir. 2007) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). Because, in this context, our jurisdiction extends only to legal questions, we may not review "denials of qualified immunity 'if resolution of the immunity defense depends upon disputed factual issues.'" *Washington v. Napolitano*, 29 F.4th 93, 103 (2d Cir. 2022) (internal alterations omitted) (quoting *DiMarco v. Rome Hosp. & Murphy Mem'l Hosp.*, 952 F.2d 661, 665 (2d Cir. 1992)). This rule prevents us from entertaining a defendant's argument that "the district court committed an error of law in ruling that the plaintiff's evidence was sufficient to create a jury issue on the facts relevant to the defendant's immunity defense." *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir. 1996). It follows that we cannot review "a district court's finding that there is enough evidence in the record to create a genuine issue as to factual questions that are, in fact, material to resolution of the qualified immunity claim." *Doninger v. Niehoff*, 642 F.3d 334, 352 (2d Cir. 2011). Instead, to obtain immediate review of a district court's denial of immunity, a defendant must argue that "the immunity defense is established as a matter of law" based on "stipulated facts, . . . or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Terebesi v. Torreso*, 764 F.3d 217, 229 (2d Cir. 2014) (quoting *Salim*, 93 F.3d at 90); *see also Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003) (explaining that "we will disregard any disputed facts or facts that contradict [the plaintiff's] version of the events" when reviewing a denial of summary judgment on qualified immunity).

**II.     *Brady* Violations**

The Detectives challenge the district court's conclusion that genuine disputes of material fact preclude summary judgment on qualified immunity for Plaintiffs' *Brady* claims related to the nondisclosure of (1) Thompson and Pearson's exculpatory statements, and (2) the Detectives' threats made to these witnesses during their interviews. First addressing the nondisclosure of

4

witness statements, the Detectives argue that because we have held that *Brady* does not require disclosing "preliminary, challenged, or speculative information," *United States v. Amiel*, 95 F.3d 135, 145 (2d Cir. 1996) (citation omitted), the Detectives did not violate clearly established law by failing to include Pearson and Thompson's statements in their police reports, *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (explaining that qualified immunity protects government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (citation omitted)).

But by 1999, it was well established that police officers are required to "turn exculpatory evidence over to the prosecutors," *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992), and that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule," *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)); *see also United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir. 1987) ("The duty to disclose encompasses not only exculpatory evidence, but also evidence that may be used to impeach a government witness."); *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (explaining that "'*Brady* matter'[] includes not only evidence that is exculpatory . . . but also evidence that is useful for impeachment").

Here, crediting Thompson and Pearson's account of their interviews with the Detectives, their undisclosed statements contradict the inculpatory testimony they provided at trial. A reasonable civil jury drawing all permissible inferences in Plaintiffs' favor could therefore conclude that these undisclosed statements would have affected the criminal jury's assessment of the witnesses' credibility. *See Walker*, 974 F.2d at 300 (noting that "evidence impeaching the accusing witness or revealing a lineup misidentification" is "clearly *Brady* material"). The Detectives'

immunity defense therefore cannot be resolved as a matter of law on the record viewed most favorably to Plaintiffs but rather turns on the jury's assessment of the credibility of Thompson and Pearson's testimony.

The Detectives also argue that, given Thompson and Pearson's criminal histories, the conclusion that their statements were not *Brady* material but merely attempts to avoid involvement in a criminal investigation was not objectively unreasonable. But this misunderstands our review at this stage. We have made clear that "disputed material issues regarding the reasonableness of an officer's perception of the facts (whether mistaken or not) [are] the province of the jury, while the reasonableness of an officer's view of the law is decided by the district court." *Jones v. Treubig*, 963 F.3d 214, 231 (2d Cir. 2020). The Detectives here are arguing the reasonableness of their perception of the facts, an issue the jury must resolve before we can determine whether the Detectives are entitled to qualified immunity as a matter of law. Because the resolution of the immunity question depends on disputed facts and debated inferences from the record, we lack jurisdiction to decide the issue on interlocutory appeal.

Turning to the Plaintiffs' *Brady* claims related to the alleged suppression of the Detectives' threats made to Thompson and Pearson during their interviews, the district court concluded that the Detectives failed to argue the immunity defense as to these specific claims and therefore declined to address its applicability at this juncture. We discern no error in this determination.

This Court has made clear that a defendant seeking to assert the affirmative defense of qualified immunity must "adequately develop" that defense, *Blissett v. Coughlin*, 66 F.3d 531, 538 (2d Cir. 1995), and that "[t]he qualified immunity defense can be waived, either by failure to raise it in a timely fashion, or by failure to raise it with sufficient particularity," *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) (citations omitted). At summary judgment, the Detectives did not

address whether and how qualified immunity precluded liability for their failure to disclose their alleged interview techniques, raising no argument "distinct from their contention . . . that no constitutional violation occurred." *Blissett*, 66 F.3d at 539; *see also Kerman v. City of New York*, 374 F.3d 93, 117 (2d Cir. 2004) (explaining that "a qualified immunity argument made" at a trial on excessive force and battery claims "could not preserve a defense of qualified immunity to the (already dismissed) claim of unlawful seizure"). We therefore agree with the district court's determination not to address qualified immunity as to these claims, and we also decline to do so. *See Stephenson v. Doe*, 332 F.3d 68, 75 (2d Cir. 2003) ("It is well established that a reviewing court usually does not consider an issue not passed upon below." (internal quotation marks omitted)). The Detectives will have the opportunity at trial to pursue their arguments. *See McCardle*, 131 F.3d at 50 ("Where the qualified immunity defense has not been resolved prior to trial, it may be presented to the jury or it may be decided by the court as a matter of law.").

**III.        Fabrication of Evidence Claims**

The district court determined that the "evidence, viewed fully and most favorably to [the Plaintiffs], raises triable issues of fact with regard to the Detectives' alleged knowledge of the falsity" of statements made by Pearson, Brown, and the Detectives themselves. Special App'x 105. On appeal, the Detectives do not contest our clearly established caselaw holding that police officers are liable under § 1983 for "creat[ing] false information likely to influence a jury's decision and forward[ing] that information to prosecutors." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Instead, the Detectives argue that the record is insufficient to support the conclusion that the Detectives fabricated evidence to secure Plaintiffs' convictions. But as we have held time and time again, "we lack jurisdiction to undertake" a review of the district court's determination that "sufficient evidence existed to create a genuine issue of fact" relevant

7

to resolution of the qualified immunity defense. *Locurto v. Safir*, 264 F.3d 154, 167 (2d Cir. 2001); *see also Salim*, 93 F.3d at 91 ("What we may not do . . . is entertain an interlocutory appeal in which a defendant contends that the district court committed an error of law in ruling that the plaintiff's evidence was sufficient to create a jury issue on the facts relevant to the defendant's immunity defense."); *McColley v. Cnty. of Rensselaer*, 740 F.3d 817, 822 (2d Cir. 2014) (explaining our review of an interlocutory appeal from a denial of qualified immunity "extends to whether a given factual dispute is 'material' for summary judgment purposes," but not to "whether a dispute of fact identified by the district court is 'genuine'" (citation omitted)). We therefore lack jurisdiction to entertain the Detectives' qualified immunity arguments regarding the evidence fabrication claims.

**IV.     Failure to Intervene Claims**

Finally, the Detectives challenge the district court's ruling that Detectives Dease and Breland "are each potentially liable for failing to intervene to prevent the other from withholding Thompson- and Pearson-related *Brady* material." Special App'x 101. The Detectives first argue that they cannot be liable for failing to intervene because, even viewing the record most favorably to Plaintiffs, no underlying violation of clearly established law occurred. As we have already concluded that the resolution of the immunity question for the underlying *Brady* claims is contingent on the resolution of factual disputes, we lack jurisdiction to resolve the failure to intervene claim on these grounds. The Detectives also argue they did not have a reasonable opportunity to intervene, contending that there is insufficient evidence in the record to demonstrate that either Detective was aware of the other's failure to disclose the interview methods. But we are precluded from reviewing a district court's determination that the plaintiff's evidence was sufficient to create a triable issue of fact at this stage. *Salim*, 93 F.3d at 91. Rather, we conclude

8

that because disputes of material fact preclude resolution of the Detectives' qualified immunity defense as to the failure to intervene claims, we lack jurisdiction to review them.

*     *     *

We have considered the Detectives' remaining arguments and find them to be without merit.   Accordingly, Plaintiffs' motions to dismiss are **GRANTED**, and we **DISMISS** the appeal for lack of appellate jurisdiction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court